NOT FOR PUBLICATION

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

—————————————————————
                                                         :
NEWMAN,                                         :
                                                         :
                    Plaintiff,                  :
                                                         :         Civil No. 20-1464 (RBK/JS)
          v.                                        :
                                                         :         **OPINION**
NORTH CAROLINA INSURANCE       :
UNDERWRITING ASSOCIATION /     :
NORTH CAROLINA JOINT              :
UNDERWRITING ASSOCIATION, et   :
al.,                                                 :
                                                         
                    Defendants.                 
—————————————————————

**KUGLER**, United States District Judge:

Presently before the Court is Defendant North Carolina Insurance Underwriting Association ("NCIUA") and North Carolina Joint Underwriting Association's ("NCJUA") (collectively "NC Associations") Motion to Dismiss (Doc. No. 3) and Defendant Kellogg-Morgan Agency, Inc.'s ("KM Agency") Motion to Vacate the Clerk's Entry of Default (Doc. No. 8). For the reasons set forth below, this Court **TRANSFERS** this action to the United States District Court for the Eastern District of North Carolina, **DENIES** as moot Defendant NC Associations' Motion to Dismiss for Lack of Personal Jurisdiction, and **GRANTS** Defendant KM Agency's Motion to Vacate the Clerk's Entry of Default.

**I.     BACKGROUND**

This case requires us to consider the borders of personal jurisdiction. The underlying dispute centers on the denial of an insurance claim for the alleged unauthorized gutting of Plaintiff

Barbara Newman ("Ms. Newman") house in North Carolina by her former tenant Mrs. Wethington.

### A.  Factual Background

Ms. Newman originally purchased the North Carolina property in 2004 with the intention of using it as her retirement home. (Doc. No. 1., Compl. at ¶ 8). With this intention in mind, she made a substantial investment in the property by renovating it. (*Id.* at ¶ 9). The renovations occurred from November 15, 2011 to March 6, 2012. (*Id.*). However, around 2013, Ms. Newman decided to move to New Jersey to be closer to her family and grandchildren. (*Id.* at ¶ 10). Prior to or around 2013, Ms. Newman's property was insured by NC Associations—an underwriting association of insurers created by North Carolina statute to serve as insurers of last resort for properties solely in North Carolina—through its agent, Kellogg-Morgan Agency ("KM Agency"). (*Id.* at ¶ 11). She applied for this insurance policy from the NCJUA. (Doc. No. 3., Brink Affidavit at ¶ 12).

After Ms. Newman relocated to New Jersey, she was notified by NC Associations through its agent, KM Agency that her previous insurance policy covering the NC property terminated due to the vacancy. (*Id.* at ¶ 11). In response, Plaintiff sought to and successfully leased the premises to Mrs. Wethington on December 1, 2015. (*Id.* at ¶ 12). As a result of Mrs. Wethington occupying the premises, NC Associations through its alleged agent, KM Agency, re-instated the insurance policy covering the property. (*Id.* at ¶ 14).

On December 4, 2017, while Mrs. Wethington was still occupying the NC property, NC Associations, through KM Agency, issued a "new" property insurance policy and sent it to Ms. Newman who resided in New Jersey. (*Id.* at ¶ 15). The declaration page to this "new" policy provided:

This continuation of coverage application and declaration provides information about your policy. . . . Your payment of premium is considered a reapplication for coverage and is a representation that there have been no substantial changes to occupancy or condition of the property. (*Id.* at Exhibit B).

Sometime during the first week of May of 2018, Mrs. Wethington contacted Ms. Newman and informed her that the NC property had been burglarized and that she had filed a report with the local law enforcement agency. (Doc. No. 1., Compl. at ¶ 21). Shortly thereafter, on May 10, an individual living next to NC property contacted Ms. Newman and informed her that the property "was gutted and turned into a shell." (*Id.* at ¶ 23). Five days later, on May 15, Ms. Newman contacted NC Associations, through its agent KM Agency, to file a claim under the insurance policy covering the North Carolina property. (*Id.* at ¶ 24). Upon inspecting the property, Ms. Newman discovered damage to the property itself and theft of her personal possessions. (*Id.* at ¶ 26).

On May 24, David Palmer, an independent adjuster hired by NC Associations, met with Ms. Newman at the North Carolina property to assess the damage to the property. (*Id.* at ¶ 29). A little over a month later, on June 29, NC Associations sent Ms. Newman a confirmation letter denying her claim for coverage because it appeared the losses claimed were the result of remodeling, as opposed to theft. (*Id.* at ¶ 32). Specifically, the letter from NC Associations noted:

This is to confirm our discussion on June 28, 2018 in connection with the above reported vandalism claim. We have received and reviewed report prepared by an independent adjuster . . . the damage he observed appeared to be resulting from a remodel in process . . . [w]alls, flooring, fixtures, and appliances have been moved or removed . . . [n]ew framing is in place for remodel . . . [b]edrooms 2 and 3 have been open and combined. (*Id.* at Exhibit E).

After receiving this letter, she attempted to contact NC Associations on several occasions to seek a better explanation as to why her coverage was denied. (*Id.* at ¶ 35). In response to one Ms. Newman's request for clarification, on August 3, 2018, an Account Manager for KM Agency

emailed her a copy of the two-page declaration and a Microsoft Excel Spreadsheet. (*Id.* at ¶ 36). A little over a month later, on September 10, 2018, Ms. Newman appealed NC Associations' denial of her claim. (*Id.* at ¶ 37). As of the filing of the complaint, she had not received a response from NC Associations or KM Agency on the status of her appeal. (*Id.*).

On February 12, 2020, Ms. Newman filed a complaint in this Court against KM Agency, NC Associations, and Nina Wethington. (Doc. No. 1). Plaintiff alleges six causes of action: (1) breach of contract against NC Associations; (2) breach of implied covenant of good faith and fair dealing against NC Associations and KM Agency; (3) intentional infliction of emotional distress against NC Associations; (4) unjust enrichment against all Defendants; (5) unfair and deceptive trade practices in violation of N.C. Gen. Stat. 75-1.1 through 75-35 against NC Associations and KM Agency; and (6) gross negligence against Mrs. Wethington. (*Id.* at ¶ 42–75). Plaintiff alleges Defendant KM Agency was served with a copy of the summons and complaint on March 13, 2020. (Doc. No. 6). On April 17, 2020, Plaintiff requested an entry of default by the Clerk of the Court. (*Id.*). It was granted that same day. (*Id.*).

Defendant NC Associations moved to dismiss the complaint for, among other reasons, lack of personal jurisdiction. (Doc. No. 3). Defendant KM Agency moved to vacate the Clerk's entry of default. (Doc. No. 8).

## II.   LEGAL STANDARD

### A.  Motion to Dismiss for Lack of Personal Jurisdiction

To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the court's jurisdiction over the moving defendants. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007). However, when a district court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case

of personal jurisdiction and is entitled to have its allegations taken as true and all factual disputes drawn in its favor. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).

Despite having all reasonable inferences drawn in its favor, the plaintiff cannot rely on the bare pleadings alone to defeat a defendant's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction. *Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 603 (3d Cir. 1990). The plaintiff must respond by establishing jurisdiction facts through sworn affidavits and competent evidence, not through mere allegations. *Id.* at 604. Thus, the Court may rely on documents outside the pleadings because a Rule 12(b)(2) motion "is inherently a matter which requires resolution of factual issues outside the pleadings, i.e., whether in personam jurisdiction actually lies." *Id.* at 603.

### B.  Federal Rule of Civil Procedure 55(c)

Federal Rule of Civil Procedure 55(c) provides "[t]he court may set aside an entry of default for good cause." The decision to vacate a default is left to the sound discretion of the district court. *Stevenson v. Cty. Sheriff's Office of Monmouth*, No. CV135953MASTJB, 2016 WL 373944, at *1 (D.N.J. Jan. 29, 2016). When deciding whether to vacate default the court must consider three factors: (1) whether the plaintiff will be prejudiced if the default is lifted; (2) whether the defendant has a meritorious defense; and (3) whether culpable conduct of the defendant led to the default. *Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 656 (3d Cir. 1982).

"There is a distinction between a default standing alone and a default judgment. . . . Less substantial grounds may be adequate for setting aside a default than would be required for opening a judgment." *Feliciano*, 691 F.2d at 656. Where there is a close case, the Third Circuit has instructed that "doubts should be resolved in favor of setting aside the default and reaching a decision on the merits." *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 122 (3d Cir. 1983) (citing *Farnese v. Bagnasco*, 687 F.2d 761, 764 (3d Cir. 1982)).

### III.     DISCUSSION

#### A.  Personal Jurisdiction

Defendant NC Associations contends Plaintiff Ms. Newman cannot establish this Court has specific jurisdiction over it because NCIUA's contacts with New Jersey have no connection with Ms. Newman's claims and NCJUA's tangential, minimal contacts with NJ are insufficient to support personal jurisdiction. Plaintiff maintains Defendants had minimum contacts with New Jersey sufficient to support personal jurisdiction because the contract between the parties was signed here, Defendants sent bills to Plaintiff while she resided here, the subject policy was renewed and forwarded to Plaintiff in New Jersey, Plaintiff paid premiums to Defendants while she resided her, and Defendants engaged in bad faith conduct by denying coverage to Plaintiff which caused injury to her in New Jersey.

A federal court sitting in diversity applies the law of the forum state in determining whether personal jurisdiction is proper. Fed.R.Civ.P. 4(e). New Jersey's long-arm statute permits the exercise of personal jurisdiction over a non-resident defendant to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment. *Wartsila NSD N. Am., Inc. v. Hill Int'l, Inc.*, 269 F. Supp. 2d 547, 552 (D.N.J. 2003). Consequently, we look to federal constitutional law to determine whether this Court may properly exercise personal jurisdiction over Defendant NC Associations. The Due Process Clause of the Fourteenth Amendment places limits on the power of a state to assert personal jurisdiction over a nonresident defendant. *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co.*, 75 F.3d 147, 150 (3d Cir. 1996).

The two types of personal jurisdiction are general and specific jurisdiction. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007). General jurisdiction is found where a defendant has "continuous and systematic" contacts with the state. *Helicopteros Nacionales de*

*Columbia, S.A. v. Hall*, 466 U.S. 408, 414–415 (1984). Plaintiff does not contend that Defendant NC Associations is "at home" in New Jersey nor that it has "continuous and systematic" contacts sufficient to support general jurisdiction. As such, our analysis will be limited to specific jurisdiction.

The determination of whether a court can assert specific jurisdiction over a non-resident defendant within the limits imposed by the Due Process Clause requires a three-step analysis. First, the Court must determine whether the defendant "purposefully directed [its] activities at the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Second, the litigation must "arise out of or relate to" at least one of those activities. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). And third, if the two prior requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476.

The usual practice is to assess specific jurisdiction on a claim-by-claim basis. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 318 (3d Cir. 2007). This is appropriate because "there are different considerations in analyzing jurisdiction over contract claims and over certain tort claims." *Remick v. Manfredy*, 238 F.3d 248, 255–56 (3d Cir. 2001). However, this claim specific analysis is unnecessary when there are factually overlapping claims. *O'Connor*, 496 F.3d at 318 n.3. Here, to a certain extent, Plaintiff's three contract-based claims factually overlap. For Plaintiff's breach of contract claim, she alleges Defendant NC Associations breached the insurance contract by failing to pay for the full amount due under the policy even though her claim was covered by the policy. Likewise, Plaintiff alleges Defendant breached the implied covenant of good faith and fair dealing because it knew the insurance policy covered the theft and damage to Plaintiff's property

but denied coverage anyways.[1] Lastly, it is alleged that Defendant was unjustly enriched because it continued to receive monthly installments of premium payments without fulfilling its respective duties under the insurance policy. While these three claims have slightly different factual iterations, their substance is the same—Defendant NC Associations denied coverage to Plaintiff under its insurance policy even though it knew the damage to her home was not caused by "remodeling" but theft, and Plaintiff did not authorize any "remodeling." Because these allegations are "factually overlapping claims," they will be analyzed together to resolve whether this Court has personal jurisdiction over Defendant. *Remick v. Manfredy*, 238 F.3d 248, 255–56 (3d Cir.2001).

### i.   Plaintiff's Contract Claims Fail to Establish that Defendant Purposefully Availed Itself of the Benefits and Protections of New Jersey's Laws

As a threshold matter, the defendant must have "purposefully avail[ed] itself of the privileges of conducting activities within the forum." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Physical entrance is not required. *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir.1993) ("Mail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction."). But what is necessary is a deliberate targeting of the forum. *O'Connor*, 496 F.3d at 317. Thus, there is no purposeful connection between the defendant and the forum state when there is a "single, unsolicited contact, random or fortuitous acts, or the unilateral acts of others (including the plaintiff)." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985).

---

[1] Plaintiff also alleges that Defendant NC Associations breached the implied covenant of good faith and fair dealing by forwarding to Plaintiff a Microsoft Excel Spreadsheet which was represented as the insurance policy. Even though this allegation does not factually overlap with the other claims, its connection to New Jersey is too attenuated to even suggest that it establishes "purposeful availment." It is nothing more than a mere "informational communication" in response to Plaintiff's request for the insurance policy. With respect to the allegation in paragraph 50 of Plaintiff's complaint, it is more appropriately addressed with Plaintiff's tort claims.

In the context of breach of contract claims, the fact that a non-resident has contracted with a resident of the forum state is not, by itself, sufficient to justify personal jurisdiction over the nonresident. *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). Something more is needed. Thus, for breach of contract claims, the Court must consider the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties actual course of dealing. *Remick v. Manfredy*, 238 F.3d 248, 256 (3d Cir. 2001).

In *Vetrotex* the Third Circuit held that Conglas, a manufacturer of fiber glass roofing products, had not purposefully directed its activities toward Pennsylvania even though it contracted with Vetrotex, a Pennsylvania corporation engaged in the manufacture of fiber glass products, and therefore affirmed the District Court's dismissal of the complaint for lack of personal jurisdiction. *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co*., 75 F.3d 147, 148 (3d Cir. 1996). In so holding, the *Vetrotex* Court focused on the fact that nearly all of the conduct between the parties occurred in California: (1) Vetrotex solicited Conglas and sent representatives to California to negotiate the contract; (2) even though Conglas sent the executed contract to Pennsylvania, Conglas had signed it in California; (3) no Conglas personnel ever visited Pennsylvania; (4) no product was shipped from, through, or to Pennsylvania; (5) Vetrotex's invoicing for the product sold under the contract was handled in its California office; and (6) Conglas made all payments for goods to Vetrotex's California office. *Id.* at 151. The only contact Conglas had with Pennsylvania consisted of some telephone calls and letters written to Vetrotex. *Id.* at 152. However, the Court explained that "informational communications in furtherance of [a contract between a resident and a nonresident] does not establish the purposeful activity necessary for a valid assertion of personal jurisdiction over [the nonresident defendant]." *Id.* Accordingly, it

held that Conglas did not purposefully avail itself of the privilege of doing business in Pennsylvania for the purposes of the district court's exercise of personal jurisdiction. *Id.* at 153; *see also Rotondo Weinreich Enterprises, Inc. v. Rock City Mech.*, Inc., No. CIV.A. 04-5285, 2005 WL 119571, at *6 (E.D. Pa. Jan. 19, 2005) (concluding an out-of-state corporation does not have sufficient contacts with a forum to establish personal jurisdiction where its only contacts were a contract with a forum state resident, the transmission of some related communications to that resident, the contract negotiations were initiated by the resident, the contract is to be performed outside of the forum state, the contract does not contain a choice of law provision for the forum state, and the contract does not create long-term or substantial ties with the forum state).

In contrast to *Vetrotex*, the Third Circuit concluded in *Remick* that the district court erred when it held it did not have personal jurisdiction over Defendant Manfredy for Remick's breach of contract claim. *Remick v. Manfredy*, 238 F.3d 248, 257 (3d Cir. 2001). Lloyd Remick, an attorney specializing in sports and entertainment law, filed suit again Angel Manfredy, a lightweight professional boxer, for claims arising out of their contractual relationship. *Id.* at 252. On appeal, the Third Circuit found the District Court's reliance on *Vetrotex* misplaced as Remick's contract claims were more comparable to the cases distinguished in *Vetrotex* than the case itself. *Id.* at 256. It pointed out that, unlike the defendant in *Vetrotex*, Manfredy initiated the business relationship by placing a telephone call to Remick's associate. *Id.* This solicitation eventually resulted in the fee agreement which Manfredy signed and returned to Pennsylvania. *Id.* The agreement also noted it was required by Pennsylvania Rules of Professional Conduct suggesting that Manfredy was receiving the benefit of Pennsylvania law under the agreement. *Id.* Additionally, at least one payment was sent by Manfredy to Remick at his Philadelphia office, and most of the services performed by Remick on behalf of Manfredy were conducted at Remick's

Philadelphia office. *Id.* Lastly, the Third Circuit explained the repeated informational communications between Manfred and Remick, while not dispositive, count toward the minimum contacts necessary to support personal jurisdiction. *Id.* Therefore, because the facts as a whole involved more entangling contacts than the mere informational communications at issue in *Vetrotex*, the Court held the District Court erred in concluding it did not have personal jurisdiction over Manfredy. *Id.* at 257.

These two cases illustrate the open-textured nature and fact-intensive inquiry that is inherent in personal jurisdiction decisions. While the issue is close, the current case is more analogous to the factual circumstances in *Vetrotex* than *Remick*.

The location and character of the contract negotiations strongly militate against concluding there is personal jurisdiction. Plaintiff, not Defendant, re-initiated the contractual relationship between them by leasing the premises to Mrs. Wethington. By Plaintiff's own admission, after she was informed that her insurance coverage was terminated due to the vacancy, she "placed an advertisement seeking a tenant to occupy and rent the subject property." And it was only after Mrs. Wethington was occupying the subject property, that "Defendants NCJUA/NCIUA through KM Agency re-instated plaintiff's previously terminated coverage for the subject property." It was Plaintiff, not Defendant, then that "reached out" to re-establish their relationship. In fact, Plaintiff never alleged that Defendant NC Associations solicited the contract or initiated the business relationship between them. Nor does Plaintiff dispute that she applied for an insurance policy from the NCJUA.

Similarly, Defendant NC Associations issuance of the "new" policy to Plaintiff was a continuation of their contractual relationship and no different from the one in *Vetrotex*. In that case and this one, the contract, which renewed the previous contractual obligations, was executed in a

state different from the one it was issued to. In *Vetroxtex*, it was executed in California and issued to Pennsylvania; here it was executed in North Carolina and issued to New Jersey. The declaration page of the "new" policy makes this clear. It provides "your payment of premium is considered a *reapplication* for coverage," not an *acceptance* of coverage. Thus, the contract must still be approved, and consequently executed, in North Carolina before coverage is extended. Accordingly, because the Third Circuit in *Vetrotex* did not consider the issuance of the contract significant enough to establish specific jurisdiction, we will not either.

While Plaintiff contends "the contract between the parties was signed in this state," meaning New Jersey, the insurance policy Plaintiff attached as Exhibit B to the Complaint does not show any signature. Nor did Plaintiff make this allegation in the Complaint; it is argued only in Plaintiff's brief. Either way, it is well settled that when a written instrument contradicts allegations in the complaint, the exhibit controls. *ULC Oil & Gas Field Servs. v. EXCO Res*. (PA), *LLC*, No. 2:14-CV-72, 2014 WL 6607280, at \*5 (W.D. Pa. Nov. 19, 2014) ("[W]here a claim is predicated on a written instrument that is attached as an exhibit to the complaint, the written instrument will control and courts are not required to accept as true any contradictory allegations in the complaint." (collecting cases)). Therefore, we will not give any weight to this contention.

Moreover, the terms of the contract, the parties' course of dealing, and contemplated future consequences show that Defendant NC Associations did not deliberately target New Jersey. By its plain text, the insurance policy only covers Plaintiff's property in North Carolina and it contains a choice of law provision requiring the policy to be governed by the laws of North Carolina. Additionally, the alleged damage to Plaintiff's property occurred in North Carolina, Plaintiff filed a claim under the insurance policy by contacting KM Agency in North Carolina, an independent adjuster met Plaintiff at her home in North Carolina to assess the damages, and based on this

inspection, Defendant NC Associations—from its only office in North Carolina—determined the claim was not covered and mailed the denial of coverage letter to Plaintiff. The parties' course of dealing therefore occurred almost exclusively in North Carolina. Further buttressing the point that Defendant NC Associations' contacts with New Jersey are inconsequential, is the fact that it does not advertise or solicit business in any state. In fact, its principal place of business and only location is in North Carolina. As such, Defendant could not anticipate that any future consequences of issuing the insurance policy to Plaintiff would arise in New Jersey, but in North Carolina as it is the center of gravity of the current dispute.

This is not a situation like *Remick* where the "facts as a whole involved more entangling contacts than" mere informational communications. Rather, it is like *Vetrotex*, where the only contact NC Associations had with New Jersey consisted of a letter informing Ms. Newman of its decision to deny her insurance claim, and two letters or bills apprising her of the outstanding balance due on her policy.[2] These communications do not show that Defendant NC Associations solicited the contract or initiated the business relationship leading up to the contract as in *Mellon Bank*. 960 F.2d 1217, 1219 (3d Cir. 1992). Nor do they establish that Defendant transmitted payments to Plaintiff in the forum state like the defendants did in *North Penn Gas Co*. 897 F.2d 687, 690–91 (3d Cir. 1990). Instead, it was Plaintiff who sent premium payments to North Carolina. And it is the Defendant's conduct, not Plaintiff's, "that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). Thus, it cannot be said that Defendant NC Associations deliberately

---

[2] One of these letters or bills is not relevant to Plaintiff's breach of contract and breach of the implied covenant claims as her causes of action do not arise out of or relate to it. The bill is dated 1/13/16. As pled, Plaintiff's causes of action arise out of the denial of coverage letter, not the bill. This further supports the conclusion that the quality and quantity of contacts here do not support personal jurisdiction. The bill is relevant to Plaintiff's unjust enrichment claim, but it, in conjunction with the other bill, are mere "informational communications" insufficient to establish "purposeful availment."

targeted New Jersey to avail itself of the benefits and protections of its laws. At bottom, Defendant's contacts with New Jersey constitute mere "informational communications in furtherance of" the contract between Plaintiff and Defendant and are insufficient to establish the purposeful activity necessary for personal jurisdiction.

Plaintiff's reliance on *McGee v. International Life Ins. Co*., is misplaced.[3] In *McGee* a California resident purchased a life insurance policy from Empire Mutual Insurance Company, an Arizona corporation. *McGee v. Int'l Life Ins. Co*., 355 U.S. 220, 221 (1957). A few years later, International Life Insurance Company, a Texas based corporation, assumed the insurance obligations of Empire Mutual and subsequently mailed a reinsurance certificate to the California resident offering to insure him under the same terms and conditions as Empire Mutual had. *Id.* The resident accepted the offer. *Id.* Thus, in *McGee*, unlike here, the defendant International Life Insurance Company solicited business in California and entered into a contract in that forum. In the present case, Plaintiff was the one to initiate the contractual relationship, NC Associations did not solicit any business in New Jersey, and the contract was entered into in North Carolina. These distinctions are enough to move us outside the precedential reach of *McGee*.

Ultimately, Defendant NC Associations has not "purposefully availed itself" of the privilege of doing busines in New Jersey for the purpose of establishing the "minimum contacts" necessary for specific jurisdiction. Because we have concluded that Plaintiff has not made the threshold showing of sufficient minimum contacts with New Jersey to warrant exercise of personal

---

[3] *McGee*'s broad application has been cabined by *Burger King*. In *Burger King* the Supreme Court clarified that although *McGee*'s holding that "even a single act can support jurisdiction" still remains good law, such single acts "may not be sufficient to establish jurisdiction if their nature and quality and the circumstances of their commission create only an attenuated affiliation with the forum." 471 U.S. at 475 n.18. Put differently, while there only needs to be "minimum contacts" with the subject forum, they need to establish a "substantial connection." This has not occurred here.

jurisdiction over Defendant, we need not address the issue of whether exercising jurisdiction would comport with fair play and substantial justice.

### ii.   Plaintiff's Tort Claims Fare No Better

Plaintiff asserts two tort claims against Defendants NC Associations: (1) intentional infliction of emotional distress; and (2) violation of North Carolina's unfair and deceptive trade practices statute. Also, as noted above, Plaintiff's allegation in paragraph 50 essentially amounts to an allegation of fraud and is more appropriately addressed here. With respect to the intentional infliction of emotional distress claim, Plaintiff alleges Defendant NC Associations knew her claims under the insurance policy were covered but it disregarded its obligation by crafting a false narrative to deny Plaintiff's claim. It is further alleged that as a result of this bad faith denial of coverage, Plaintiff suffered emotional distress. The claim for violation of North Carolina's unfair and deceptive trade practices statute incorporates these allegations. Additionally, in support of her claim for breach of the implied covenant of good faith and fair dealing, Plaintiff alleges Defendant continually misrepresented that she was engaged in remodeling even though it knew her property was remodeled in 2011 and knew she never authorized the tenant to remodel. This allegation is simply just a more factually precise allegation than the one accompanying the claim for intentional infliction of emotional distress. Thus, because Plaintiff's intentional tort and breach of the implied covenant of good faith and fair dealing claims cannot be disaggregated, we will consider them together.

Plaintiff's argument why this Court has personal jurisdiction over Defendant NC Associations with respect to her tort and breach of the implied covenant claims is somewhat unclear. From what we can glean from the briefs, it appears Plaintiff's claim is that this Court has personal jurisdiction under *Carteret Sav. Bank v. Shushan* because the mailing of the denial of

coverage letter constitutes a tort in New Jersey. Likewise, Plaintiff cites to *Calder v. Jones* and seems to contend Defendant NC Associations' out of state tortious conduct caused "effects" in New Jersey. Because the "effects" test articulated in *Calder* is not implicated unless a defendant's contacts with a forum are insufficient under traditional specific jurisdiction, we will start with the traditional test first.

Plaintiff had not demonstrated that Defendant NC Associations purposefully availed itself of the privileges of acting within New Jersey such that it could reasonably anticipated being haled into court in New Jersey. For Plaintiff's intentional tort and breach of the implied covenant claims, there are only two relevant contacts Defendant had with New Jersey—a phone call on June 28, 2018, and a letter mailed to Plaintiff on June 29, 2018. The only reason Defendant NC Associations even called Plaintiff and mailed the subsequent letter is because Plaintiff filed a claim under her insurance policy. Consequently, the phone call and letter informing Plaintiff that her claim was denied, were merely responses to Plaintiff's actions. It is well-settled that unilateral activity on the part of a plaintiff does not make a defendant amenable to personal jurisdiction. *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (noting that the traditional personal jurisdiction principles that apply to all claims also apply in the context of intentional tort claims); *see also Rodi v. S. New England Sch. of Law*, 255 F. Supp. 2d 346, 351 (D.N.J. 2003) (finding the Southern New England School of Law was not subject to personal jurisdiction in New Jersey because it sent a letter to Plaintiff in New Jersey in response to Plaintiff's request for information). Even accepting Plaintiff's allegations as true, the contacts here are with Plaintiff, not New Jersey, and Due Process mandates that "a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the "random, fortuitous, or attenuated" contacts he makes by interacting with other persons affiliated with the State." *Walden v. Fiore*, 571 U.S. 277, 286 (2014).

16

It is for these reasons that Plaintiff citation to *Carteret* also does not support her argument. In *Carteret*, Carteret Savings Bank sued its Louisiana lawyers in New Jersey for a breach of fiduciary duties and fraudulent misrepresentation. *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 (3d Cir. 1992). Carteret had retained a Louisiana law firm to represent it in a real estate transaction concerning a Louisiana construction project. *Id.* It entered into a loan agreement with Three Lakeway for the construction of a multi-use project in Louisiana. *Id.* When Three Lakeway declared bankruptcy, the general contractor sought payment, and Carteret was ultimately held liable. *Id.* at 143. As a result, Carteret sued its lawyers claiming that during a meeting that took place in New Jersey, the lawyer failed to divulge that he had a prior relationship with the general contractor and that the lawyer had amended the contract to benefit the general contractor. *Id.* at 143. The Third Circuit concluded the district court erred in dismissing the complaint for lack of personal jurisdiction because the lawyers act of traveling to New Jersey, where he allegedly made the fraudulent statement, was sufficient for the exercise of personal jurisdiction. *Id.* at 147.

Not only was the defendant in *Carteret* physically present in the state when he made the allegedly fraudulent misrepresentation, but his actions were also not the result of the plaintiff's "unilateral activity." The defendant, in the process of committing fraud, was availing himself of the privileges of doing business in New Jersey by representing his client in a real estate transaction; he was not merely sending a letter in response to an insurance claim. Here, Defendant NC Associations was never physically present in New Jersey. While physical presence in New Jersey, or any state for that matter, is not required for a finding of "purposeful availment" in light of *Burger King Corp.,* Plaintiff has not alleged any other facts, beyond the unilateral conduct, that would support a finding that Defendant's efforts were "purposefully directed" toward New Jersey. 471 U.S. 462, 472 (1985).

Because Plaintiff has failed to demonstrate that Defendant NC Associations contacts with New Jersey are sufficient under the traditional specific jurisdiction standard, we will now inquire whether Plaintiff has established personal jurisdiction under the test derived from *Calder v. Jones*. 465 U.S. 783 (1984). "Generally speaking, under *Calder* an intentional tort directed at the plaintiff and having sufficient impact upon it in the forum may suffice to enhance otherwise insufficient contacts with the forum such that the 'minimum contacts' prong of the Due Process test is satisfied." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 260 (3d Cir. 1998). Under this test, a court can exercise personal jurisdiction over a defendant if the plaintiff shows: "(1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; and (3) the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity." *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007).

While the traditional specific jurisdiction and *Calder* effects test are different, they are "cut from the same cloth." *Id.* Both require intentionality on the part of the defendant such that it would expect to be haled to court in a given forum because of its contacts and activities in the forum. *Id.* "Only if the expressly aimed element of the effects test is met need we consider the other two elements." *Id.*

*IMO Indus., Inc. v. Kiekert AG* is instructive on what is required to show that a defendant expressly aimed its tortious conduct at the forum. In *IMO Industries*, Imo, a multinational corporation with its principal place of business in New Jersey, sued a German corporation, Kierkert, for interfering with its attempted sale of its wholly owned subsidiary. *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 256 (3d Cir. 1998). After Kiekert learned the sale of Imo's subsidiary

would be to one of its competitors, it sent two letters—one to the subsidiary based in Italy and the other to the New York investment firm representing Imo in the sale—threatening to revoke the licensing agreement it had with the subsidiary if the deal went through. *Id.* at 257. These letters were eventually forwarded to Imo in New Jersey and it sued Kiekert when the deal collapsed. *Id.* at 258. The Third Circuit upheld the district court's dismissal for lack of personal jurisdiction because Imo could not demonstrate that Kiekert expressly aimed its tortious conduct at New Jersey. *Id.* at 268. In so holding, it pointed out that none of the meetings between Kiekert and Imo occurred in New Jersey and Kiekert mailed its letters to the wholly owned subsidiary in Italy and the investment firm in New York, not New Jersey. *Id.* at 267. The phone calls between Imo and Kiekert did not help either because Kiekert never placed a phone call to New Jersey, rather the calls all originated with Imo. *Id.* at 267. The Court reasoned that a "few calls or letters into the forum may be of only marginal import if the dispute is focused outside the forum." *Id.* at 268. And it was clear that New Jersey was not the focus of the dispute because the bids for sale of the company occurred in New York and France, the subject of the bidding was an Italian company, and licensing agreement on which the tortious activity was based was governed by German law. *Id* at 268.

The present dispute easily comes within the holding of *IMO Indus*. Defendant NC Associations relevant contacts with New Jersey—the mailing of the denial of coverage letter on June 29 and discussion on June 28—were in response to Plaintiff filing an insurance claim. Thus, just as Kiekert's contacts with New Jersey originated with IMO, Defendant NC Associations' contacts with New Jersey originated with Plaintiff. Similarly, the focus of the dispute is outside of New Jersey. The damage to the property occurred in North Carolina, the decision to deny coverage to Plaintiff was made in North Carolina, the insurance policy is governed by North Carolina law,

and the insurance policy only covered the North Carolina property. In fact, the denial of coverage letter states the "loss location" is Como, North Carolina. Accordingly, Plaintiff cannot demonstrate that Defendant NC Associations' responsive contacts were expressly aimed at New Jersey.

### B. Defendant Kellogg-Morgan's Motion to Vacate the Clerk's Entry of Default is Granted

In considering the propriety of default and default judgment, the Court "has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *HICA Educ. Loan Corp. v. Lepera*, 2011 WL 3515911, at *2 (D.N.J. 2011) (quoting *Ramada Worldwide, Inc. v. Benton Harbor Hari Ohm, L.L.C.*, No. 08-3452, 2008 WL 2967067, at *9 (D.N.J. July 31, 2008)); *see also Mark IV Transportation & Logistics v. Lightning Logistics, Inc.*, 705 Fed.Appx. 103, 2017 WL 3668946, at *4 (3d Cir. August 25, 2017) (quoting *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999)) ("'[W]hen a court is considering whether to enter a default judgment, it may dismiss an action sua sponte for lack of personal jurisdiction.'"). "If a court lacks personal jurisdiction over a defendant, the court does not have jurisdiction to render a default judgment, and any such judgment will be deemed void." *Allaham v. Naddaf*, 635 Fed.Appx. 32, 36 (3d Cir. 2015) (citing *Budget Blinds, Inc. v. White*, 536 F.3d 244, 259 (3d Cir. 2008)) (other citations omitted).

Thus, the threshold issue in determining whether the entry of default should be vacated is whether personal jurisdiction exists over Defendant KM Agency. KM Agency was the alleged agent of Defendant NC Associations and thus the actions Plaintiff attributed to Defendant NC Associations were actually carried out by KM Agency, Accordingly, because this Court does not have personal jurisdiction over Defendant NC Associations, we also do not have personal jurisdiction over Defendant KM Agency.

### C. Transfer Pursuant to 28 U.S.C. § 1406(a)

20

Having determined that personal jurisdiction over Defendant NC Associations and KM Agency is not available in the District of New Jersey, the Court notes that venue in this district is also improper pursuant to 28 U.S.C. § 1391(b), which provides: "[a] civil action wherein jurisdiction is not founded solely on diversity of citizenship may . . . be brought only in (1) a judicial district where any defendant resides, if any defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought." Defendant NC Associations and KM Agency are entities "with the capacity to sue and be used in [their] common name under applicable law" and thus "shall be deemed to reside . . . in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). They do not reside in New Jersey and the events giving rise to Ms. Newman's claims occurred in North Carolina making this Court the improper venue for this action.

When venue is improper, 28 U.S.C. § 1406(a) provides: "The district court of a district in which is filed a case laying venue in the wrong district or districts shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which could have been brought." "Dismissal is considered to be a harsh remedy ... and transfer of venue to another district court in which the action could originally have been brought, is the preferred remedy." *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962). This Court finds that the United States District Court for the Eastern District of North Carolina will almost certainly have personal jurisdiction over Defendant NC Associations and KM Agency in this matter. Therefore, in the interests of justice, the Court concludes that transfer under § 1406(a) is appropriate in this case.

## IV.     CONCLUSION

For the reasons expressed above, Defendant NC Association's motion to dismiss is denied as moot, Defendant KM Agency's motion to vacate the Clerk's entry of default is granted, and the case will be transferred to the United States District Court for the Eastern District of North Carolina. An appropriate order will follow.

Dated: 11/9/2020                                    s/ Robert B. Kugler
                                                    ROBERT B. KUGLER
                                                    United States District Judge